United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 06, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 21-30923 |
| GRIDDY ENERGY LLC, § | |
| § | CHAPTER 11 |
| Debtor. § | |
| § | |
| RUSSELL F. NELMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | ADVERSARY NO. 22-3025 |
| § | |
| TXU RETAIL ENERGY COMPANY LLC, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION

Russel F. Nelms, as the plan administrator of Griddy Energy LLC, brought this action against TXU Retail Energy Company LLC seeking to avoid and recover the value of its right to do business with the customers that ERCOT transferred to TXU under 11 U.S.C. §§ 548(a)(1)(B) and 550(a). On TXU's motion, this adversary proceeding is dismissed.

### BACKGROUND

The Electric Reliability Council of Texas ("ERCOT") operates and manages the Texas power grid. (Case No. 21-30923, ECF No. 21 at 5). The Public Utility Commission of Texas ("PUCT") delegates the authority to adopt and enforce rules relating to the production and delivery of electricity to ERCOT. (ECF No. 10 at 4). Under this authority, ERCOT promulgates protocols that govern the administration of the Texas electricity market. (ECF No. 10 at 5). ERCOT acts as a clearinghouse between electricity generators and electricity providers in Texas.

Griddy Energy LLC was a retail electric provider in the Texas electricity market. (Case No. 21-30923, ECF No. 21 at 6). Griddy offered its customers access to wholesale electricity prices with no mark-up in exchange for a monthly flat fee. (Case No. 21-30923, ECF No. 21 at 6). Griddy's

business model allowed retail customers to gamble on market prices. Customers received the advantage of low prices or the disadvantage of high prices, depending on market conditions. Unlike most retail providers, Griddy did not engage in hedging to stabilize prices that retail customers would pay.

To participate in the Texas electricity market, a provider must first execute a Standard Form Market Participant Agreement ("SFA") with ERCOT. (Case No. 21-30923, ECF No. 21 at 5). The SFA establishes "the terms and conditions by which ERCOT and [a market participant] discharge their respective duties and responsibilities under the ERCOT Protocols." (Claim No. 4555 at 6). The SFA provides that if a market participant defaults on its obligations to ERCOT, ERCOT may immediately terminate the SFA on the date notice is delivered to the market participant. (Claim No. 4555 at 17). On January 20, 2017, Griddy and ERCOT entered into a SFA. (Claim No. 4555 at 11).

On February 11, 2021, a catastrophic winter storm hit Texas. (ECF No. 1 at 3). To prevent the Texas electric grid from collapsing, ERCOT implemented rolling blackouts throughout the state. (ECF No. 1 at 3). On February 15, 2021, the PUCT instructed ERCOT to set the wholesale settlement price of electricity at the market-wide cap of $9,000/MWh. (Case No. 21-30923, ECF No. 21 at 12). The price remained at this level for 87.5 hours. (Case No. 21-30923, ECF No. 21 at 12). Griddy attempted to pass the $9,000/MWh rate to its customers, most of whom failed to pay. (ECF No. 1 at 4). As a result, Griddy did not pay the balance of its nearly $30 million ERCOT invoice. (ECF No. 1 at 4).

On February 22, 2021, ERCOT notified Griddy that it was in breach of the SFA for failure to pay outstanding invoices and post adequate collateral. (ECF No. 1 at 5). On February 26, 2021, ERCOT terminated the SFA and revoked Griddy's rights as a market participant. (ECF No. 1 at 5). Following its protocols, ERCOT transitioned Griddy's 9,926 customers to various Providers of Last Resort ("POLR") between February 26 and March 2, 2021. (ECF Nos. 1 at 5; 10 at 7). TXU accepted 2,290 of Griddy's customers. (ECF No. 1 at 5).

Griddy filed for Chapter 11 relief on March 15, 2021. (Case No. 21-30923, ECF No. 1). This Court confirmed its plan on July 7, 2021. (Case No. 21-30923, ECF No. 386). The plan empowers the Plan Administrator to pursue avoidance actions on behalf of Griddy. (Case No. 21-30923, ECF No. 386 at 38, 62). On February 14, 2022, the Plan Administrator commenced this adversary proceeding. (ECF No. 1). The Plan Administrator seeks to avoid ERCOT's customer transfer to TXU as a constructive fraudulent transfer under § 548(a)(1)(B). (ECF No. 1 at 6). In addition, the Plan Administrator sought to recover "the value of the customers" from TXU under § 550(a). (ECF No. 1 at 6).

On March 18, 2021, TXU moved to dismiss the complaint primarily because ERCOT's transition to TXU was not a "transfer of an interest in Griddy's property" as required by § 548 when Griddy had no property interest in its customers. (ECF No. 10 at 3).

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12(b) in adversary proceedings. FED. R. BANKR. P. 7012.

In evaluating a complaint under Rule 12(b)(6), a court must examine whether the pleading "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "Although a district court must assume the

veracity of well-pleaded facts, a complaint that fail[s] to show more than mere conclusory allegations is properly met with dismissal for failure to state a claim." *Smith v. Dep't of Health & Hosps. La.*, 581 F. App'x 319, 321 (5th Cir. 2014) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th. Cir. 2010) (internal quotation marks omitted)). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Turner v. AmericaHomeKey Inc.*, 514 F. App'x 513, 516 (5th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

## DISCUSSION

TXU argues that ERCOT's termination of the SFA and revocation of Griddy's rights as a market participant immediately divested Griddy of any right to do business with customers purchasing electricity. (ECF No. 32 at 3). TXU is correct. Griddy lost its property interest in the right to do business with its customers before the mass transition occurred. Griddy has not stated a facially plausible claim for fraudulent transfer. Its § 548(a)(1)(B) claim is dismissed. Consequently, Griddy's § 550(a) recovery claim is also dismissed.

**I.   GRIDDY DID NOT HAVE A PROPERTY INTEREST IN ITS CUSTOMERS AT THE TIME OF TRANSFER**

Section 548(a)(1) of the Bankruptcy Code states that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . ." 11 U.S.C. § 548(a)(1)(B). To successfully maintain an action under § 548, the movant must show that the debtor had an existing interest in the property at the time of its transfer. *See Hoffman v. Houston Soc'y for the Prevention of Cruelty to Animals (In re Hoffman)*, No. 16-3222, 2017 WL 727543, at *5 (Bankr. S.D. Tex. Feb. 23, 2017), *aff'd* No. AP 16-3222, 2019 WL 2501556 (S.D. Tex. June 14, 2019) *aff'd sub nom*. *In re Hoffman*, 795 Fed. Appx. 291 (5th Cir. 2020) and *aff'd sub nom*. *In re Hoffman*, 955 F.3d 440 (5th Cir. 2020) ("[Plaintiff] must have had an interest in the horses at the time they were given to [the Defendant] in order to sustain a § 548 cause of action."). In *Hoffman,* a Texas court found that 211 horses had been cruelly treated. *Id.* at *1. As a consequence of that finding, Hoffman's ownership rights in the horses terminated as a matter

of law. *Id.* Immediately after the termination, the horses were transferred to the Houston Society for the Prevention of Cruelty to Animals. *Id.* Hoffman filed for bankruptcy and sued the HSPCA. *Id.* The adversary proceeding was dismissed because Hoffman owned no interest in the horses at the time that they were transferred to the HSPCA. *Id.*

Although the Bankruptcy Code does not define "interest of the debtor in property," the term as used in §§ 547 and 548 is limited to the debtor's pre-petition property that, but for the transfer, would have become "property of the estate" under 11 U.S.C. § 541. *See Begier v. I.R.S.*, 496 U.S. 53, 58–59 (1990) ("For guidance, then, we must turn to § 541, which delineates the scope of property of the estate and serves as the postpetition analog to § 547(b)'s property of the debtor.") (internal quotation marks omitted); *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1416 (5th Cir. 1997) ("[I]t makes most sense to read the term 'interest of the debtor in property' under § 547(b) as here being synonymous with the term 'property of the estate' under § 541."); *Off. Emp.-Related Issues Comm. of Enron Corp. v. Arnold (In re Enron Corp.)*, 318 B.R. 655, 660 (Bankr. S.D. Tex. 2004) (finding "an interest of the debtor in property" as used in §§ 547(b) and 548(a) to be synonymous with "property of the estate" under § 541 (citing *Criswell*, 102 F.3d at 1416)).

Section 541(a)(1) provides that "property of the estate" encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law determines the existence and scope of a debtor's pre-petition property interests. *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 224 (5th Cir. 2001) ("A debtor's pre-petition rights in property, such as a cause of action, are determined according to state law." (citing *Butner v. United States*, 440 U.S. 48, 55 (1979))). If, before the transfer, state law divests the debtor of a property interest prior to the transfer of the property to a third party, the property does not become "property of the estate." *See Hoffman*, 2017 WL 727543, at *5 ("Texas has determined that an owner of a live animal that is cruel to that animal has forfeited his right of ownership. . . . Insofar as property rights are determined under state law, and Hoffman was found to have cruelly treated the horses, his

ownership was divested."); *Thaler v. Cnty. Of Nassau Dist. Att'y (In re Wolfson)*, 261 B.R. 369, 375 (Bankr. E.D.N.Y. 2001) (holding that because a pre-petition state court forfeiture order divested the debtor of an interest in property before the transfer to a third party, the property did not become property of the bankruptcy estate); *see also* 5 COLLIER ON BANKRUPTCY ¶ 541.03 (16th ed. 2022) ("The trustee can assert no greater rights than the debtor had on the date the case was commenced."). For the Plan Administrator's § 548 action to survive, it must show that Griddy had a property interest in its customers at the time they were transferred to TXU.

Griddy did not have a property interest in its customers under Texas law at the time of the mass transition to the POLRs. Under ERCOT Protocol § 16.11.6.1.6(1),[1] when a market participant breaches its agreement with ERCOT, ERCOT may revoke that market participant's right to conduct activities. *See* ERCOT Nodal Protocols § 16.11.6.1.6. (February 2021 Protocols – Nodal, February 1, 2021), *available at* https://www.ercot.com/files/docs/2021/08/18/February _1__2021_Nodal_Protocols.pdf. The parties agree that on February 26, 2021, ERCOT terminated the SFA with Griddy and revoked Griddy's rights as a market participant. (ECF Nos. 1 at 5; 10 at 2). Griddy's ability to service its customers ended at that moment. Both the ERCOT Protocols and the Texas Administrative Code sequence the mass transition of customers only after the market participant's right to serve its customers is terminated.

Section 25.43(p)(10)(A) of the Texas Administrative Code states:

(10) On the occurrence of one or more of the following events, ERCOT must initiate a mass transition to POLR providers, of all of the customers served by a REP:

> (A) Termination of the Load Servicing Entity (LSE) or Qualified Scheduling Entity (QSE) Agreement for a REP with ERCOT;

---

[1] The ERCOT Protocols are promulgated under the authority delegated to ERCOT by the Texas Utilities Code to "adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants . . . ." TEX. UTIL. CODE § 39.151(d) (2021). The Protocols "have the force and effect of statutes." *Elec. Reliability Council of Tex., Inc. v. CPS Energy*, 648 S.W. 3d 520, 530 (Tex. App.–San Antonio 2021, pet. denied.) (citing *Pub. Util. Com'n v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 595 (Tex. App.–Austin 2011, pet. denied.)).

16 Tex. Admin. Code § 25.43(P)(10)(A). Section 16.11.6.1.6.3(b) of the February 2021 ERCOT Protocols similarly provides:

> On revocation of some or all of the Market Participant's rights or termination of the Market Participant's agreements and on notice to the Market Participant and the Public Utility Commission of Texas (PUCT), ERCOT shall initiate a Mass Transition of the Market Participant's [customer identification] pursuant to Section 15.1.3.1, Mass Transition Process, without the necessity of obtaining any order from or other action by the PUCT.

ERCOT Nodal Protocols § 16.11.6.1.6.3(b).

These events are chronologically identical to *Hoffman*: divestment under state law followed by a transfer to a third party. Griddy ceased to have an interest in its customers when ERCOT terminated Griddy's SFA. Griddy had no right to sell electricity to its former customers when ERCOT transitioned them to the POLRs. The right to do business with the customers would not have become property of Griddy's estate regardless of the transfers. The Plan Administrator's § 548(a)(1)(B) claim fails.

## II. THE § 550 CLAIM FAILS BECAUSE THERE WAS NO AVOIDABLE TRANSFER

Section 550 governs the liability of a transferee of an avoided transfer:

(a)   Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

  (1)   the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
  (2)   any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

Section 550 is not a stand-alone cause of action. A trustee cannot successfully recover under § 550 unless a transfer is avoidable under §§ 544, 545, 547, 548, 549, 553(b), or 724. *See Schmidt v. Meridian Cap. Found. (In re Black Elk Energy Offshore Operations, LLC)*, No. 19-03330, 2019 WL 3889761, at *4 (Bankr. S.D. Tex. Aug. 16, 2019) ("To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that

initial transfer." (quoting *Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff Inv. Sec., LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016))). Griddy's fraudulent transfer action fails. Griddy's § 550 claim must be dismissed.

## CONCLUSION

A separate order will be entered.

SIGNED 10/06/2022

_____
Marvin Isgur
United States Bankruptcy Judge